We're going to move to the last argument for the morning, Mount Hawley Insurance v. East Perimeter Pointe Apartments. May it please the court. Hold on one moment. We don't start until I say. I want to make sure everybody's on board. Mr. Brown. Okay. Yes, sir. Mr. Southerland, you may begin. Thank you, your honor. And may it please the court. I'm Brian Southerland for Appellant Ventron Management. The appellants have agreed that I'll argue for 10 minutes and reserve three for rebuttal. Let's see what's on the clock. The district court erred in concluding that Georgia law applies and not California's notice prejudice rule because California's notice prejudice rule is not a construction of the English common law. Georgia's presumption that courts of other states are always and necessarily expounding the English common law applies only when the state was one of the original 13 colonies. California was not. And so the presumption of identity does not apply in this case. The threshold question for Georgia's choice of law rule is, as I've indicated, whether the English common law governs. Unlike in 13 colony states, California courts don't necessarily expound common law when they speak. And we know that for a few reasons. But the most important one is civil code section 22.2. And that's the source of English common law in California, not inheritance as in the 13 colony states, just a statute. And what that statute says, and this is important, is that the common law of England, so far as it is not repugnant to or inconsistent with the constitution of the United States or the constitution or the laws of this state is the rule of decision. And you'll notice that the very first thing that statute says is when the English common law does not apply. It doesn't apply when the common law of England is repugnant to or inconsistent with California state law. And then the question becomes, who has the power to declare the law of the state of California, such that under that statute, English common law by that statute does not apply. And the answer to that question is the California Supreme Court. And it has said so in cases such as Katz versus Wakenshaw, where the court held that such portions of the law of England as are not adapted to our condition form no part of the law of this state. And then later in the Pitzer College decision, and that is the case- It seems to me that California is a common law state and that because it is, Georgia recognizes kind of a Blackstonian view of the world, which is that they can discover the common law as well as any other state. But it seems to me that at the end of the day, what the district court said was right. And that is, it really doesn't make a difference. That there is prejudice if California law applies. And if not, you get the same result under Georgia law. Well, I'm not sure if I understand the point regarding prejudice, Your Honor. There's a different result if California law applies and the insurers wouldn't like that result. But if we're serious about applying the law of the state in which the contract was made, and that's what Georgia law requires, then we should look at the question whether California law is indeed the English common law. And what Georgia Supreme Court has said is that there is a difference when you're looking at the 13 colonies versus states that were not part of the 13 colonies. It said that very clearly in the Nisbet case where it said Georgia's choice of law rule has no application to the contract of a state that was never part of an English territory or one of the 13 colonies. There's no dispute that California is not such a state. And this is not an issue that this court or the Georgia Supreme Court has decided before. So what the insurance companies are looking to do, and I think what the district court did when it said that there's no difference between a 13 colony state and one of the other states was it took Georgia's 13 colony rule, the one set out in Nisbet and reaffirmed in Coon itself in footnote five of that decision, said we're gonna make that 13 colony presumption a 50 state presumption. And I see that that approach has some intuitive appeal, but it's not one that the Georgia Supreme Court allows. Footnote five of Coon, which holds open the issue whether states that are not part of the 13 colonies have presumptively the same English common law in every situation as do states within the 13 colonies. That issue is open. And in that footnote, the Georgia Supreme Court pointed to page 811 of Nisbet. That's the one I just quoted that says that Georgia's choice of law rule has no application. If this issue is determinative, should we certify the question to the Supreme Court of Georgia? I think that would be a prudent approach in light of footnote five in Coon. Yes, it does appear as though the Georgia Supreme Court regards the issue as one that they didn't need to reach in that case, but may have had something to say about it. And we think that we could persuade the Georgia Supreme Court that what it said in Nisbet was appropriate because states like California have a different inheritance. And so they don't look at the rule of courts in quite the same way as a 13 colony state would. And I can appreciate that it's difficult perhaps for a federal court to see that distinction because the first and second rule of federal court judging is don't make law from the bench, but that's not the law that governs in a state like California. In the 1963 decision in Campbell, California created the public policy of the state and it did declare California law. And that's very different from what courts and other jurisdictions may do. To see that that is a possibility, and that's one that this court and the Georgia Supreme Court can recognize. Imagine if we were looking at Spain or another country, and we wouldn't say then that the courts of those countries were necessarily expounding English common law whenever they speak. And similarly, as the Georgia Supreme Court recognized in creating the 13 colony rule, courts in other states are not necessarily expounding English common law. They do so to the extent that a statute provides, but the statute in this case, as I've indicated, creates room for the California Supreme Court and other California courts to declare California law in a different way, a way that is different from the law of the state of Georgia or the English common law. Okay. You've saved three minutes for rebuttal, Mr. Sutherland. We're gonna hear from Mr. Leonard. Good morning, your honors. May it please the court. I'm James Leonard with Barnes and Thornburg in Atlanta, representing East Perimeter Court Departments. We adopt the arguments just made by counsel for Ventron with regard to the presumption of identity in the 13 colony rule. So I'm not going to address those, or not plan to address those issues in my remarks. My focus is going to be on the issue of the validity of East Perimeter's excuse, namely that it is the undisputed fact that East Perimeter has never been sued before. This case, they have apartments all over in Georgia and around the country. They own the bricks and mortar. They don't manage the apartments. They hire people like Ventron and other companies to do that. And they have never been sued before this matter for any bodily injury or work or wrongful death claims arising from events at their apartments. And they've had those events, but had never before this case been sued. That was their objective experience. East Perimeter hired Ventron to manage the apartments and believed that it had no liability for random criminal acts occurring on their premises. So that really distills the issue to the one of, of whether or not the excuse is reasonable under Georgia law and that it, at a minimum, create a jury question, which made summary judgment inappropriate. I think first we have to address one issue, and that is that there are two notice provisions in the Mount Holly policy. There is a notice provision in the section that's entitled duties in the event of occurrence, claim or suit. That provision provides the insured must see to it that Mount Holly is notified as soon as practicable of an occurrence, which may result in a claim. The trial court inexplicably ignored that section and relied instead on a section entitled claim handling, which has a different provision, which the trial court relied upon for for coverage. That is the provision that contains the immediately report language regarding an event that may result in a claim against this policy. As we noted above, this notice was reasonable because East Perimeter had no knowledge that such a claim, such an event would result, may result in a claim. And so it satisfied either provision of the Mount Holly policy. With regard to the excuse, as this court held in Evanston Insurance Company versus Stonewall Surplus Lines, 111-Fed-3852, notice in that claim to the excess insurer was found to be reasonable as a matter of law. In Evanston, the insured relied upon its experience in trucking claims and advice of counsel that a claim involving a wrongful death and a minor. Before you finish. Yes, Your Honor. You argued the insurance contract was formed in California because it was delivered in California. Wasn't this emailed? I'm sorry, did you say it wasn't emailed? Yes. It was emailed to the broker for the insured in California, Skinner. And so- How do we know that the delivery is the location where the person receives the email as opposed to where it's sent? Because it was sent from the wholesale broker who had no relationship whatsoever with the insurer. The insured was not bound by or had any knowledge of this RT specialty wholesale broker who was on the insurer's side. So they could not have bound the insurer. They couldn't have accepted the policy on behalf of the insurer. The insurer didn't even know they existed until this litigation ensued. So- Do we have any Georgia law that tells us how to determine where electronic delivery occurs, whether it's sent or received? I have never seen a case dealing with emails. Unfortunately, we haven't, I guess, gotten to that point where there is a delivery by email and that is what determines delivery. But receipt by the California retail broker who actually represented the insurer, they're the one that could accept the policy on behalf of the insured. And they were physically, that office was in California. Okay. Any other questions? Okay. We're gonna hear from Mr. Jackson. Thank you, your honor. May it please the court. There's two reasons this case requires the application of Georgia law. The first is that the Mount Holly policy was initially delivered in Georgia. Georgia's traditional ex loci contractus rule holds that an insurance policy is made where it is delivered by the insurer for delivery to the insured. In Pierce v. Life Insurance of Virginia, Georgia Court of Appeals held that delivery of the policy to the insurance company's agent to be unconditionally delivered to the insured completes the contract as of the time of such delivery. Archie Specialty received this contract, this policy, as you say, via email in its Atlanta office and was charged with delivering it ultimately to the purchasing group. EPP gave authority to the purchasing group to secure its insurance. The purchasing group gave Skinner Select or Skinner Select gave MS Skinner authority to do the same thing. And MS Skinner gave Archie Specialty that same authority to secure the insurance for the purchasing group of which East Perimeter was a part. Mount Holly delivered the policy for unconditional delivery to Archie Specialty in Atlanta and falls squarely within the existing case law in Georgia on this point. East Perimeter argues without blushing that it never heard of Archie Specialty and had no relationship with it. But the truth is East Perimeter has no relationship to anything in this case. It authorized a purchasing group to get its insurance and then had nothing else to do with getting the insurance. In fact, East Perimeter's name is nowhere in the policy which is an issue that isn't really before this court but could come up on remand. Georgia law applies under the traditional Lex Loci contractus rule and we don't have to get to this presumption of identity rule. As for the presumption of identity rule and Coon stated the rule clearly. And the general rule is in that in the absence of a statute at least with respect to a state where the common law is in force, a Georgia court will apply the common law as expounded by the courts of Georgia. Black's Law Dictionary and all of the case law in Georgia defines the common law as judicially made decisions as opposed to statutes and cases interpreting statutes. So acknowledging the rejection of legal realism, Coon said there is one common law that can be properly discerned with wise judges and not multiple common laws of judges who make a law in the various jurisdictions. Coon cited with approval this court's opinion in Frank Briscoe. Frank Briscoe said it is clear that the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes. And when no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law. And then Frank Briscoe cited Mott's. Mott's is a Georgia appellate court opinion which held that because there was a statute applying the common law in Florida as there is in California, the court would apply Georgia common law. The year before that was a case called Trustees which has been argued by the appellants to lead to a different outcome. But the truth is, is that these cases are entirely consistent because Georgia's choice of law rule is admittedly a catch-22 that always leads to the same conclusion. On any event, California has by statute adopted the common law, hasn't it? That's right, it has. And the exceptions to the application of the common law are the same exceptions that apply everywhere. The common law can't overcome the new U.S. Constitution, it can't overcome the state constitution and it can't overcome statutes that change the common law. That's it. That's the same rule in Georgia. And Georgia courts apply decisions, apply the law as the case comes before them. And when judicially made decisions are made, that becomes the common law of Georgia. This case is just a contractual interpretation dispute and breach of contract was a main part of the common law. So- What do we, Mr. Jackson, what do we make of the fact that the Georgia Supreme Court reserved the 13 colony question in Coon? Well, I think the court mentioned that some states refer to the presumption of identity rule and says, we don't really have to deal with that because we have a state that at least partially was a part of Georgia. And so we can apply that rule without addressing it. But what I would say is the court cited Mott's with approval the court cited Briscoe with approval. And those are opinions that apply the rule, particularly Mott's on point with a state that is not one of the original 13 colonies or its territories. The presumption of identity rule was created in a time where foreign case law had to be pled or proven. And in this case, we're now in the modern era we can research the cases and look. But Mott said, oh, we have a, it's been pled that there's a statute that Florida applies the common law. So we're gonna apply Georgia common law. In trustees, there was no proof that Florida applied the common law and it wasn't an original 13 colony state. And what did the court do? It applied Georgia common law because the real rule in Georgia is you always apply Georgia common law unless there's a statute. And every state except for Louisiana apply has a statute adopting the common law when it became a state to the union. So there's a very consistent way to interpret these opinions. I would submit that this in light of Mott's there's no reason for this court to certify the question. The most important factor this court has said in certifying a question is the existence of sufficient sources of state law to allow a principled rather than conjectural conclusion. Coon adopted or cited with approval Frank Briscoe. It's cited with approval Mott's. And so this court has a principled non-conjectural conclusion and reason to apply Georgia law here. If you get to that decision, because like I said, under Lex Loci Contractus this issue is really not reached. As for the excuses for not reporting this opinion, East Perimeter argues in its briefs that it is part of Osgoode Properties an international apartment complex conglomerate and Ventron, which is a national and scope property management company that was operating its property. All state insurance company V. Walker, a 2002 appellate case and protective insurance V. Johnson the Supreme Court case from 87 all hold that ignorance of the policy or its requirements and a failure to report is not excused unless it's caused by fraud or overreaching by the insurance company. There's no evidence of that here. What is happening is East Perimeter is trying to isolate itself as a single entity company while on the other side of the argument arguing that it's part of a huge conglomerate which is named as the insured in the policy that doesn't name East Perimeter. Whether an occurrence gives rise to a claim is not the insurance subjective belief but rests on the belief that it's an objective issue. Does the, would a reasonable person looking at this believe that a claim would be possible? Georgia law has recognized third-party criminal act liability for apartments for three decades or more. My entire career I've dealt with these cases. And the TV commercials nowadays are advertising for these types of cases. So the idea that Ventron or that East, at the agent of East Perimeter or that East Perimeter would not be aware this could be a claim doesn't pass the blush test. The policy provided in an endorsement that all insureds says in the event of an occurrence that may result in a claim against the policy all insureds must immediately report the occurrence. And the policy also contains a provision that says that all legal papers, claims and notices must immediately be, any involved insured must report those to the insurance company. This isn't just a failure to report an occurrence situation. The occurrence happened on December 26, 2015. The notice of council came in on January 6, 2016 and it was received by Ventron's agent on January 8th. Neither of those matters, the occurrence or the notice of claim were reported to the carriers. And both of those conditions were violated.  were conditioned precedent to coverage. And with being a conditioned precedent that means that the failure to comply with them results in no coverage. So the failure to give the notice of the occurrence and the failure to give the notice of the letter from the plaintiffs in the underlying case who said they were writing about a claim that you needed to report this to your carrier and that you needed to preserve evidence. That's being overlooked by the appellants. There's no excuse for not doing that. I see that I'm out of time. Absent any questions, I will pass to Lexington's council. Okay, thank you, Mr. Rapp. Morning, your honors. I appreciate you making time for us this morning. One thing I wanted to address was the certification issue. And I agree with Mr. Jackson that there's no reason to certify this issue because it's been addressed in the Mott's case. And I wanted to point out to the court that the same justice of the Georgia Supreme Court wrote the Mott's decision and wrote the trustees of Jesse Parker decision. One year apart, both Florida cases, both Florida and non-13 colony state. And it laid out real simply those two cases, how this whole situation works in a non-13 colony state. And it's almost, if you read the trustees of Jesse Parker opinion, it's almost like the court couldn't believe that they didn't plead anything about Florida. They mentioned it. You know, hey, it may have been adopted by statute, but they didn't plead it. And so Georgia law applies. Mott's gives us the example that we're in today. There's really no difference between this case and Mott's. And I was a little bit surprised that counsel for Venturano or EPPA didn't address that. It has been raised in the briefing and in the district court and in this court. And I think it takes care of that. And I'd like to note that this court recently issued an unpublished decision in a very similar case involving late notice called Nationwide Property. That case number in the 11th circuit is 19-11733. Opinion was issued August 14th, 2020, specifically noted in a footnote that the Mott's decision may take care of the 13 colony issue. And it was a case that also involved the dispute about whether California or Georgia law applies. So in other words, recognizing it's an unpublished opinion, but the court recently dealt with a very similar issue. With respect to Judge Pryor's question about why the Georgia Supreme Court left that footnote hanging in Coon, I think it was just judicial minimalism, right? I don't think the court wanted to step into something that they didn't need to in that case, but the language used in the footnote is pretty unsupportive, just sort of stating what had been done. And I think if the issue were to come up, I have no doubt that the Georgia Supreme Court would simply say, we've already decided to see Mott's and end it there. With respect to the excuses- And Mott's had told him. Yes, Your Honor, that's correct. With respect to the excuses that have been raised, I think it's important to point out that EPPA's primary excuse today is that they had never been sued before. Well, if you look at the record evidence, there's no facts tying that to anything. They don't say, we've never been sued before, and so we have no idea how to comply with our insurance policies or anything like that. They simply say, we've never been sued before. That's not enough under Georgia law. And it would create a perverse world where there would essentially be a one-suit exception. The first time you get sued, you don't have to comply with your insurance policy because you've never been sued before. And obviously that cannot be the law, and it is not the law. And it's why that type of excuse is completely insufficient. The other thing I'd like to note is counsel for EPPA cited the Evanston case that this court issued in 1997. One of the things that's lacking here that was present in Evanston, two is a completely different notice provision that exists here. But also the insured in that case was very diligent, had lawyers evaluated the claim, had all sorts of liability assessments, damage assessments. The two parties here did next to nothing. Ventron, the property manager, notified the owner of what had happened the day it happened. That's it, nothing else. There's no record evidence that they did anything else. And the owner, EPPA, did nothing. The owner is trying to get out of its contractual obligation to notify its carriers by saying we delegated that authority to our property manager. Obviously that can't be enough either because the owner has its own contractual obligation to the insurers that it can't simply delegate away for the same reason you don't get out of jail free when you have your first lawsuit. You still have to comply with policies. This case is a simple one. It's recently been addressed by this court in the nationwide case. The Mott's decision controls the choice of law issue. There's no reason to certify it. And the excuses offered by the insurance here are insufficient as a matter of law because of a complete lack of diligence and because they've been rejected previously. Thank you for your time, your honors. Thank you, Mr. Rapp. Mr. Sutherland. Thank you, your honor. Your RT specialty didn't have a direct relationship with the insurer. That's the broker that was in Atlanta, but it disclosed a profit sharing relationship between it and the insurance company. And so it could not have been an agent of the policy holders. And there's at least a disputed issue of fact on that question. RT specialty in turn delivered the policy to MG Skinner in California. So the contract was made in California. The question then is whether the English common law is one that supplies the rule of decision in this case, turning to Mott's. In that case, what the Georgia Supreme Court said was that it was expressly pleaded that the common law of England was controlling as to the transaction. Because the parties in Mott's pleaded that the English law supplied the rule of decision, there was no dispute in that case about whether the English common law applied. So Mott's is not like this case at all because Ventron contends that the English common law does not supply the rule of decision. That makes it quite different from Mott's. Counsel for the insurance company. I can tell that California has adopted a statute. And doesn't that deal with the problem of, it may not satisfy, there may not be a presumption when it comes to California, but they have a statute that adopts the common law. That looks to me like it settles the matter. Well, we respectfully disagree, Your Honor. A statute is different than an inheritance. This inheritance allows the California courts to declare their own law as the California Supreme Court has said. This court's decision in Briscoe is another case that the insurance companies brought up. But in that case, the court was looking at whether the law of New Jersey was necessarily applying to English common law. New Jersey being one of the states that is one of the 13 colonies, it inherited its system from England. And so the Georgia presumption could apply. I guess at bottom, the insurance companies say, if there's not a statute, English common law always. It's a simple dichotomy. But if it were so simple, then the Georgia Supreme Court would have said that in the Coon decision. And it didn't say that at all. In footnote five of the Coon decision, it said, we have a 13 colony rule and we don't need to go further than that today. And so to the extent that this court is in the position of not understanding why Georgia would have a 13 colony rule and instead of a 50 state rule, then what it should do is based on footnote five in the Coon decision, certify that question to the Georgia Supreme Court. So we asked the court to reverse based on the notice prejudice rule or in the alternative, because Ventron did not act unreasonably as a matter of law. Thank you, your honor. Thank you, Mr. Leonard. Just to deal quickly with a red herring, Mount Holly pled in its complaint that East Perimeter isn't insured under this policy. So the fact that they're not listed as a named insured is irrelevant. They pled it. They're precluded now from arguing otherwise. The fact is we never received this notice of counsel that came out in 2016 from the underlying plaintiffs. We did nothing because nothing happened as far as East Perimeter was concerned. They had this initial notice. And thereafter, they heard nothing about this until the lawsuits were filed, which they promptly gave notice of. Even if Georgia law applies, you still have to look at the excuse. The excuse here was reasonable. The fact is our case here is more like the Evanston, Eurotech, Lumbermans, Cootey, Bishop cases that we've cited in our briefing. The fact pattern is more like those and where the excuse was held reasonable. Here's the reality, your honors. Notice law in Georgia is all over the board. Three to four months is too short, and 15 years is okay. Okay, Mr. Leonard. Any questions? I don't hear any. So we have your case, and we are adjourned for this week. Thank you. Thank you, your honors. Thank you, your honor. Thank you.